UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| MAKE YOUR MOVE HOME CREATIONS, LLC, | ) |
| JOHN LARGE, BROOKE LARGE, | ) |
| RYLEIGH CARR, and DEANNA CARR, | ) |
| | ) |
| Defendants. | ) |

### SHELTER MUTUAL INSURANCE COMPANY'S COMPLAINT FOR DECLARTORY JUDGMENT

Plaintiff, Shelter Mutual Insurance Company ("Shelter"), by counsel and for its Complaint for Declaratory Judgment against Defendants, Make Your Move Home Creations, LLC, John Large, Brooke Large, Ryleigh Carr and Deanna Carr, states as follows:

### JURISDICTION AND VENUE

1. This is a civil action for declaratory and other relief brought pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57 to determine a controversy between Shelter and Defendants, Make Your Move Home Creations, LLC, John Large and Brooke Large, arising out of an insurance contract.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action involves citizens of different states and the amount in controversy, without interest and costs, exceeds the value specified by 28 U.S.C. § 1332 ($75,000).

3. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because the Court has personal jurisdiction over Defendants, John Large and Brooke Large, whose residence is in this district.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because the events or omissions giving rise to this lawsuit occurred in this district.

## PARTIES

5. Plaintiff Shelter is a corporation subject to Missouri's corporation laws and incorporated under the laws of the State of Missouri with its principal place of business in Columbia, Missouri. Thus, pursuant to 28 U.S.C. § 1332(c)(1), Shelter is a citizen of the State of Missouri.

6. Defendant Make Your Move Home Creations, LLC is a domestic limited liability company with its principal office located at 14447 Crest Lane, Plymouth, Indiana 46563-9462. Make Your Move Home Creations, LLC is a citizen of Indiana.

7. Defendants John Large and Brooke Large (the "Larges") are domiciled at 14447 Crest Lane, Plymouth, Indiana 46563-9462 and are citizens of Indiana.

8. Defendants Ryleigh Carr and Deanna Carr are domiciled at 19421 State Road 10, Culver, Indiana 46511-9703 and are citizens of Indiana.

## BACKGROUND

9. Shelter issued General Liability Insurance Policy No. 13-31-9498346-2 to Make Your Move Home Creations, LLC ("Make Your Move") with policy periods of April 10, 2021 through April 10, 2022 and April 10, 2022 through April 10, 2023 (the "Shelter Policy"). A true and accurate copy of the Shelter Policy is attached as Exhibit 1.

10. On February 17, 2023, Ryleigh Carr and Deanna Carr (the "Carrs") filed their Complaint for Damages against Make Your Move and the Larges, under Cause No. 50C01-2302-CT-000006 in Marshall County Circuit Court (the "Lawsuit"). A true and accurate copy of the Complaint in the Lawsuit is attached as Exhibit 2.

2

11. The Lawsuit alleges that, in early 2022, the Carrs purchased real estate in Culver, Indiana, intending the residence at 19421 State Road 10 to be a "fixer upper" home that after significant remodeling and renovation would provide a comfortable living space for the Carrs and their two young children. Exhibit 2 at ¶ 4-5.

12. The Lawsuit further alleges that the Carrs first discussed the home improvement project with Make Your Move and John Large in January 2022, before the Carrs closed on their home. Exhibit 2 at ¶ 6. The Lawsuit alleges that, after the Carrs discussed general terms, John Large used that information to produce a preliminary cost estimate that "utilized various cost data for similar projects in a similar geographic area to estimate various estimated prices designated as minimum, average, and maximum." Exhibit 2 at ¶ 7-8.

13. The Lawsuit further alleges that John Large presented to the Carrs that the minimum price for their contemplated project would be $305,000, but he assured them that price was only a "starting point" and that Make Your Move could complete the project for approximately $302,500 with many opportunities to reduce the overall cost. Exhibit 2 at ¶ 9.

14. The Lawsuit further alleges that John Large's presented estimate was "a little more than the Carrs were comfortable paying" and that they took time to reconsider the project as well as their desired budget and maximum budget. Exhibit 2 at ¶ 10.

15. The Lawsuit further alleges that the Carrs had follow-up meetings with the Larges and explained that their absolute maximum budget was $300,000 and that their desired amount was approximately $280,000. Exhibit 2 at ¶ 11. The Lawsuit alleges that Make Your Move and the Larges assured the Carrs that $280,000 was reasonable and workable, and the Larges assured the Carrs that a variety of cost-saving strategies were available to stay within their desired budget. Exhibit 2 at ¶ 12.

16. The Lawsuit further alleges that Make Your Move employed as part of its sales pitch a "Not to Exceed" budgeting approach by which Make Your Move and the Larges represented to the Carrs that their "Not to Exceed" price for the project would be $300,000 and that any failure, error or omission on the part of Make Your Move or the Larges which resulted in the cost surpassing the "Not to Exceed" number would be Make Your Move's responsibility and not the Carrs' responsibility.  Exhibit 2 at ¶ 13.

17. The Lawsuit further alleges that the Carrs were told by the Larges and Make Your Move that under no circumstances would the Carrs be required to pay more than $300,000 for the proposed home improvement project.  Exhibit 2 at ¶ 14.

18. The Lawsuit further alleges that Make Your Move proposed to approach the project in two phases, the first phase being a "design phase" in which the Larges and/or other representatives of Make Your Move would inspect the home and develop an even more concrete concept of the project and, ultimately, develop plans and drawings.  Exhibit 2 at ¶ 15.  The Lawsuit alleges that Make Your Move required the Carrs to pay $21,600 for the design phase.  Exhibit 2 at ¶ 16.

19. The Lawsuit further alleges that, once Make Your Move completed the design phase, the Carrs could proceed with Make Your Move serving as the builder for the "build phase" in which case the $21,600 payment would be credited against future build-phase invoices on a basis proportionate with the progression of the project through the build phase.  Exhibit 2 at ¶ 17.

20. The Lawsuit further alleges that the Carrs were provided with a Design Phase Service Contract, which they do not recall executing, and an invoice number for the design fee, which they promptly paid.  Exhibit 2 at ¶ 18-19.

21. The Lawsuit further alleges that, after the design phase was complete, having been

alerted to no cause for concern generally or to the budget specifically, the Carrs opted to proceed to the build phase of the project with Make Your Move as the builder, and the build phase began the day after the design phase was completed. Exhibit 2 at ¶ 21-22.

22. The Lawsuit further alleges that the Carrs do not recall Make Your Move presenting, prior to the build phase, any written contract concerning the build phase and that the Carrs have been unable to locate any such contract in their records, and, accordingly upon information and belief, Make Your Move never provided any written contract for the build phase of the home renovation project. Exhibit 2 at ¶ 23.

23. The Lawsuit further alleges that, on or around March 30, 2022, Make Your Move provided an initial build-phase invoice, the amount of which the Carrs paid in its entirety without any issue or protest, and that the invoice reflected a total budget for the project of $280,000. Exhibit 2 at ¶ 24-25.

24. The Lawsuit further alleges that, at least as far as the Carrs were aware, the build phase proceeded more or less according to plan through the spring of 2022. Exhibit 2 at ¶ 26.

25. The Lawsuit further alleges that, in April of 2022, the Carrs received three separate invoices which, in the aggregate, exceeded $65,000, and they paid these invoices without issue or protest. Exhibit 2 at ¶ 27.

26. The Lawsuit further alleges that the Carrs first became concerned shortly after payment of the April 2022 invoices when they realized that they were approximately halfway to their "Not to Exceed" threshold and had not received a single document reflecting any allocation of the funds they had paid and/or confirmation of what materials and/or labor those funds had procured. Exhibit 2 at ¶ 28.

27. The Lawsuit further alleges that Make Your Move assured the Carrs from the

beginning of the build phase that they would receive periodic budgetary information to show the allocations of their payments and to allow them to track the progress toward their "Not to Exceed" amount.  Exhibit 2 at ¶ 29.  The Lawsuit alleges that the Carrs requested John Large provide the budgetary breakdown on or around April 21, 2022.  Exhibit 2 at ¶ 30.

28. The Lawsuit further alleges that, in response to the April 21, 2022 request, John Large assured the Carrs that he would provide the budgetary breakdown soon and apologized that he was "a bit behind inputting everything."  Exhibit 2 at ¶ 31.

29. The Lawsuit further alleges that, to allay any concerns about his failure to provide the budgetary information, John Large assured the Carrs that he was "working with a $280,000 budget" and further reminded the Carrs that their "Not to Exceed" number of $300,000 entailed "a $20,000 buffer [which] we are not getting into at this point."  Exhibit 2 at ¶ 32.

30. The Lawsuit further alleges that John Large's assurances put the Carrs at ease for a time, but they followed up again in May of 2022 by which point neither John Large nor Make Your Move had provided the promised budgetary update.  Exhibit 2 at ¶ 33.

31. The Lawsuit further alleges that, in approximately the same timeframe, Make Your Move presented three additional invoices and required the Carrs to pay them before proceeding, and, with respect to these invoices, the Carrs were only provided invoice numbers and not the actual invoices themselves, and the only proof of payment the Carrs were provided was John Large's signature on a sheet of paper referencing the invoice numbers.  Exhibit 2 at ¶ 34.

32. The Lawsuit further alleges that, despite the Carrs repeatedly requesting formalized invoices for the referenced invoice numbers to understand the materials and labor that were subject to those invoices, Make Your Move never provided any.  Exhibit 2 at ¶ 35.

33. The Lawsuit further alleges that, in light of the lack of transparency and lack of

formal invoices, the Carrs became concerned again about their project and its budget, and they again requested budgetary updates and were again assured by John Large and Make Your Move that the information would be forthcoming but was not immediately available.  Exhibit 2 at ¶ 36.

34. The Lawsuit further alleges that, in late May of 2022, after multiple requests for updates from the Carrs, John Large admitted to them that he had grossly underestimated the total budget for their project and, further, had not appropriately tracked the allocation of the Carrs' costs toward the various budgetary items contemplated by the project.  Exhibit 2 at ¶ 37.

35. The Lawsuit further alleges that, during a meeting in late May of 2022, the Larges assured the Carrs that the Carrs would not be responsible for John Large's error and neglect in improperly budgeting the project and that the Carrs would still not be required to pay anything in excess of their "Not to Exceed" budget of $300,000.  Exhibit 2 at ¶ 38.

36. The Lawsuit further alleges that, while the Carrs appreciated John Large's candor and his assurances that they would not be responsible for costs in excess of their "Not to Exceed" amount, they persisted in their demands that Make Your Move provide documentation reflecting the budgetary allocations of their previous payments, though neither Make Your Move nor the Larges ever provided the requested budgetary information.  Exhibit 2 at ¶ 39-40.

37. The Lawsuit further alleges that the Larges' invoicing continued to be vague and imprecise in setting forth what materials and labor were covered by the charges they reflected.  Exhibit 2 at ¶ 41.

38. The Lawsuit further alleges that, in September of 2022, the Carrs received an invoice which reflected a line item and attendant sum of charges which were expressly acknowledged in the invoice as taking the Carrs' total payments to the $300,000 "Not to Exceed" threshold.  Exhibit 2 at ¶ 42.  The Lawsuit alleges that the invoice also reflected additional charges

which, if paid, would push the total payments past the "Not to Exceed" threshold.  Exhibit 2 at ¶ 43.

39. The Lawsuit further alleges that the Carrs paid those portions of the charges which took them up to the "Not to Exceed" threshold and reached out to Make Your Move with questions regarding the remaining charges.  Exhibit 2 at ¶ 44.

40. The Lawsuit further alleges that, during a September 2022 meeting, the Larges informed the Carrs that there was no more money to complete their renovation project and that, contrary to prior representations of Make Your Move around May of 2022, not all of the materials necessary to complete the project had even been acquired.  Exhibit 2 at ¶ 45-46.

41. The Lawsuit further alleges that the Carrs moved into the home on September 24, 2022 and were shocked to see how far it was from completion, as neither the interior nor exterior portions had been completed by Make Your Move.  Exhibit 2 at ¶ 47-48.

42. The Lawsuit further alleges that the Carrs afforded Make Your Move one final opportunity to explain itself and make things right in a meeting that occurred on September 27, 2022 and in which Make Your Move and the Larges told the Carrs that they could provide no records or documentation setting forth specifically how the $300,000 paid by the Carrs to that point had been allocated toward project materials and labor.  Exhibit 2 at ¶ 49-50.  The Lawsuit alleges that, during the September 27, 2022 meeting, Make Your Move also told the Carrs, for the first time, that it would not honor the "Not to Exceed" budget guarantee that Make Your Move had provided to the Carrs.  Exhibit 2 at ¶ 51.

43. The Lawsuit further alleges Make Your Move told the Carrs that, if they wanted the project to be completed, they would need to pay more, even though Make Your Move was unable to either confirm or deny that the Carrs had already paid an amount commensurate with all

the materials and labor their home improvement project would entail. Exhibit 2 at ¶ 52. The Lawsuit alleges that, upon receiving this information from Make Your Move, the Carrs indicated they were not willing to pay Make Your Move any additional funds, and, subsequently, Make Your Move departed the project. Exhibit 2 at ¶ 53.

44. The Lawsuit further alleges that, before exiting, Make Your Move removed various materials, such as paint and brick, from the home that the Carrs understood had already been paid for with funds they provided to Make Your Move. Exhibit 2 at ¶ 54.

45. The Lawsuit further alleges that, on or around December 27, 2022, the Carrs wrote to Make Your Move stating, in summary fashion, their extreme dissatisfaction with Make Your Move's deceptive and patently unfair business practices, and the Carrs' letter proposed options to resolve the dispute short of any litigation. Exhibit 2 at ¶ 55. The Lawsuit alleges that, a month after sending the December 2022 letter, the matter remained unresolved. Exhibit 2 at ¶ 56.

46. Count I of the Lawsuit is brought under the Indiana Deceptive Consumer Sales Act and alleges the Larges and Make Your Move engaged in a "deceptive act" by violating Indiana law applying to property improvement contracts. Exhibit 2 at ¶ 57-60. Count I alleges that the Larges and Make Your Move additionally "engaged in unfair, abusive, and deceptive acts, omissions, and practices in their dealings with the Carrs," including inaccurate and misleading statements regarding the "Not to Exceed" guarantee, inaccurate and/or materially incomplete invoicing, failure to provide formal invoicing for certain charges, failure to provide timely and accurate information regarding the application of costs covered by the Carrs, failure to maintain reasonably accurate records regarding costs and budgetary items covered by the Carrs' payments, false and misleading assurances about the project's budget status and, finally, false and misleading assurances about responsibility for any project costs in excess of the $300,000 "Not to Exceed"

threshold.  Exhibit 2 at ¶ 61.  Count I alleges that the Larges and Make Your Move "knew or in the exercise of reasonable care should have known" that the costs of the project would exceed the provided estimates as well as the "Not to Exceed" number, but the Larges and Make Your Move did not timely or appropriately disclose that information to the Carrs.  Exhibit 2 at ¶ 61.

47.     Count II of the Lawsuit alleges that the Larges and Make Your Move entered into a contract with the Carrs for estimating and budgeting services in connection with the design phase and that the Larges and Make Your Move breached the contract by failing to perform those services with the requisite level of care and skill.  Exhibit 2 at ¶ 65-68.

48.     Count III of the Lawsuit alleges that the Larges and Make Your Move guaranteed $300,000 as the maximum price for the project and breached this guarantee.  Exhibit 2 at ¶ 70-73.

49.     Count IV of the Lawsuit is brought under the Indiana Crime Victim's Relief Act and alleges that the Larges and Make Your Move committed theft and/or conversion by removing from the Carrs' home materials procured with funds the Carrs provided.  Exhibit 2 at ¶ 76.  Count IV also alleges the Larges and Make Your Move committed the crime of fraud by making knowingly false and misleading statements and creating false impressions with the intent to obtain money from the Carrs.  Exhibit 2 at ¶ 78.

50.     Count V of the Lawsuit alleges that the Larges and Make Your Move owed the Carrs a duty of reasonable care in the performance of the work to avoid harming the Carrs or their property, but the Larges and Make Your Move were negligent by failing to exercise ordinary care in the performance of their work.  Exhibit 2 at ¶ 82-83.

51.     The Larges and Make Your Move tendered a claim to Shelter under the Shelter Policy for defense and indemnity on the claims made against them in the Lawsuit.

52.     In letters dated April 3, 2023, Shelter respectfully denied that it owes the Larges

and Make Your Move coverage under the Shelter Policy for the Lawsuit against them and informed the Larges and Make Your Move that Shelter accordingly would not provide any defense or indemnification for the claims made against them in the Lawsuit.

53. There is a present and existing controversy concerning Shelter's duty to defend and indemnify the Larges and Make Your Move under the Shelter Policy for the claims made against them in the Lawsuit.

54. Shelter has named the Carrs as defendants in this action so that they may answer to their interests and so that they will be bound by any determination made by the Court on Shelter's Complaint for Declaratory Judgment.

## COUNT I- NO OCCURRENCE

55. Shelter incorporates its allegations contained in Paragraphs 1-54 as if fully set forth herein.

56. The grant of coverage in the Shelter Policy provides in pertinent part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

57. The grant of coverage in the Shelter Policy also provides in pertinent part: "This insurance applies to 'bodily injury' and 'property damage' only if: (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; (2) The 'bodily injury' or 'property damage' occurs during the policy period; and (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part. If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred,

then any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period."

58. The Shelter Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

59. The allegations in the Lawsuit do not allege an "occurrence" as that term is defined in the Shelter Policy.

60. Shelter seeks a judicial declaration that it owes no duty to defend or indemnify the Larges and Make Your Move in the Lawsuit under the Shelter Policy because the allegations against them do not constitute an "occurrence" as that term is defined in the Shelter Policy.

## COUNT II- NO PROPERTY DAMAGE

61. Shelter incorporates its allegations contained in Paragraphs 1-60 as if fully set forth herein.

62. The grant of coverage in the Shelter Policy provides in pertinent part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

63. The Shelter Policy also provides in pertinent part: "'Property damage' means: a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

64. The allegations in the Lawsuit do not allege "property damage" as that term is defined in the Shelter Policy.

65. Shelter seeks a judicial declaration that it owes no duty to defend or indemnify the Larges and Make Your Move in the Lawsuit under the Shelter Policy because the allegations against them do not constitute "property damage" as that term is defined in the Shelter Policy.

### COUNT III- "EXPECTED OR INTENDED" EXCLUSION APPLIES

66. Shelter incorporates its allegations contained in Paragraphs 1-65 as if fully set forth herein.

67. The Shelter Policy states, "This insurance does not apply to … 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

68. The allegations in the Lawsuit allege damages that the Larges and/or Make Your Move expected or intended.

69. Shelter seeks a judicial declaration that it owes no duty to defend or indemnify the Larges and Make Your Move in the Lawsuit under the Shelter Policy because the Lawsuit alleges damages that the Larges and Make Your Move expected or intended.

### COUNT IV- "YOUR WORK" EXCLUSION APPLIES

70. Shelter incorporates its allegations contained in Paragraphs 1-69 as if fully set forth herein.

71. The Shelter Policy does not provide coverage for property damage to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

72. The Shelter Policy defines, in part, "your work" as work or operations performed by you or on your behalf.

73. The allegations in the Lawsuit allege property damage to "your work" arising out of it or any part of it and included in the "products completed operations hazard" as those terms are defined in the Shelter Policy.

74. Shelter seeks a judicial declaration that it owes no duty to defend or indemnify the Larges and Make Your Move in the Lawsuit under the Shelter Policy because the Lawsuit alleges property damage to "your work" arising out of it or any part of it and included in the "products completed operations hazard" as those terms are defined in the Shelter Policy.

### IN THE ALTERNATIVE COUNT V- DAMAGE TO PROPERTY EXCLUSION APPLIES

75. Shelter incorporates its allegations contained in Paragraphs 1-74 as if fully set forth herein.

76. The Shelter Policy does not provide coverage for property damage to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

77. The Shelter Policy defines, in part, "your work" as work or operations performed by you or on your behalf.

78. The allegations in the Lawsuit allege property damage to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

79. Shelter seeks a judicial declaration that it owes no duty to defend or indemnify the Larges and Make Your Move in the Lawsuit under the Shelter Policy because the Lawsuit alleges property damage to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

### COUNT VI – OTHER TERMS

80. Shelter incorporates its allegations contained in Paragraphs 1-79 as if fully set forth herein.

81. Shelter seeks a judicial declaration that there is no coverage under the Shelter Policy for the claims alleged against the Larges and Make Your Move in the Lawsuit from any other terms, conditions, exclusions, limitations and endorsements of the Shelter Policy that may apply.

WHEREFORE, Plaintiff, Shelter Mutual Insurance Company, respectfully requests that the Court issue a judgment determining and declaring:

a. there is no coverage under the Shelter Policy for any claims against the Larges and Make Your Move arising out of the allegations in the Lawsuit;

b. Shelter is relieved from any duty to defend or indemnify the Larges and Make Your Move for the claims asserted against them in the Lawsuit; and

c. all other appropriate relief.

Respectfully submitted,

*/s/ Anna Mallon*
Anna M. Mallon, #23693-49
PAGANELLI LAW GROUP
10401 N. Meridian St., Suite 450
Indianapolis, IN 46290
Phone: 317.550.1855
Fax: 317.569.6016
E-Mail: amallon@paganelligroup.com

*Attorney for Plaintiff Shelter Mutual Insurance Company*